# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### Abingdon Division

UNITED STATES OF AMERICA

v.

DERRICK LAMONT EVANS, et al.,

Defendants

**REPORT AND RECOMMENDATION**
Criminal Number:
1:08cr00024-051

This matter is before the undersigned on Defendant Travis Dell Jones's Motion To Dismiss Indictment For Violation Of The Interstate Agreement On Detainers, (Docket Item No. 336) ("Motion"). Based on the reasons set forth below, I find that a violation of Jones's rights under the Interstate Agreement On Detainers has occurred. I further find that this violation requires that the charge pending against him in this court be dismissed. Based on the facts and circumstances of this case, I recommend that this charge be dismissed without prejudice.

*I. Facts*

The relevant facts in this case are not in dispute, and neither party has requested to present evidence on the Motion. On April 21, 2008, the government filed a criminal complaint alleging that Jones and 50 other individuals were involved in a conspiracy to distribute cocaine base or "crack" and cocaine in the Bristol, Virginia, area between January 2003 and April 2008, ("Criminal Complaint"). An arrest warrant was issued for Jones on April 22, 2008. On the face of the warrant, it stated that the

warrant was to be filed as a detainer with the "Bristol City Jail." The government concedes that Jones was sentenced in the Circuit Court for the City of Bristol, Virginia, to 30 years' imprisonment, with 24 years and 10 months of that term suspended, and he was remanded to the custody of the Sheriff of the City of Bristol on March 27, 2008. The court has no knowledge as to whether the April 22 arrest warrant was ever filed as a detainer against the defendant with the Bristol City Jail.

On May 12, 2008, this court issued a Petition For Writ Of Habeas Corpus Ad Prosequendum to the Bristol, Virginia, City Jail to surrender Jones to the United States Marshals Service for transport to court for an initial appearance on May 19, 2008. The Marshals Service produced Jones for his initial appearance before this court on May 19. By Order dated May 20, 2008, the undersigned ordered that Jones be detained pending trial and remanded to the custody of the Marshals Service based on the fact that he was "currently serving an active state court sentence." Despite this Order, the government now concedes that the Marshals Service returned Jones to the custody of the Bristol City Jail after his court appearance on May 19.

On May 28, 2008, a grand jury returned an indictment charging Jones and the 50 other individuals named in the Criminal Complaint with conspiracy to distribute crack and cocaine, ("Indictment). The government concedes that, as a result of the Indictment, the Marshals Service filed a detainer against Jones with the Bristol City Jail on May 29, 2008. A copy of this detainer shows that it incorrectly stated that Jones was an "unsentenced prisoner." (Docket Item No. 336, Attachment 2.) The detainer also incorrectly stated: "The notice and speedy trial requirements of the Interstate Agreement on Detainers Act do NOT apply to this Detainer because the

subject is not currently serving a sentence of imprisonment at the time the Detainer is lodged."

On June 9, 2008, the court issued another Petition For Writ Of Habeas Corpus Ad Prosequendum to the Bristol City Jail to surrender Jones to the Marshals Service for transport to the court for an arraignment on June 16, 2008. The Marshals Service produced Jones for his arraignment as scheduled June 16. The government also concedes that the Marshals Service returned Jones to the custody of the Bristol City Jail after his arraignment on June 16. A return of the June 9 writ filed by the Marshals Service on June 20, 2008, shows that the Marshals Service assumed custody of Jones on June 16, 2008, and returned Jones to state custody on the same day. (Docket Item No. 329.) It should be noted that the return form had a place on which to indicate whether or not the person obtained pursuant to the writ was a sentenced state prisoner, but this information was not completed. Despite the fact that the Marshals Service routinely houses federal prisoners at the Bristol City Jail, the government does not contend that Jones was being held in federal custody after his return June 16 to the Jail.

On June 20, 2008, Jones's counsel filed the Motion seeking dismissal of the charge against Jones based on the violation of Jones's rights under the Interstate Agreement on Detainers.

*II. Analysis*

The Interstate Agreement on Detainers Act, ("Agreement"), was enacted into

-3-

Case 1:08-cr-00024-JPJ-PMS   Document 539   Filed 08/07/08   Page 3 of 12   Pageid#: 6158

federal law in 1970 and has been adopted or enacted in 48 of the 50 states, including Virginia. *See* 18 U.S.C.A. App. 2 (West 2000); VA. CODE ANN. § 53.1-210 et seq. (2005 Repl. Vol.). The stated purpose of the Agreement is "to encourage the expeditious and orderly disposition of [pending] charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints" filed against prisoners. 18 U.S.C.A. App. 2, § 2, Art. I (West 2000); VA. CODE ANN. §53.1-210, Art. I (2005 Repl. Vol.). The legislative history reflects two important goals to be accomplished by the clearing of pending charges. The first is "to permit the prisoner to secure a greater degree of certainty as to his future and to enable the prison authorities to plan more effectively for his rehabilitation and return to society." S. REP. NO. 91-1356 (1970) *as reprinted in* 1970 U.S.C.C.A.N. 4864, 4865. In particular, it was noted that prisoners against whom detainers had been filed were often denied access to certain prison rehabilitation programs or privileges. *See United States v. Mauro*, 436 U.S. 340, 359-60 (1978). The second goal is to "provide[] a method whereby prosecuting authorities may secure prisoners serving sentences in other jurisdictions for trial before the expiration of their sentences and before the passage of time has dulled the memory or made witnesses unavailable." 1970 U.S.C.C.A.N. at 4865.

The Agreement applies only when a detainer has been filed by one party state against "a person [who] has entered upon a term of imprisonment in a penal or correctional institution" of another party state. 18 U.S.C.A. App. 2, § 2, Art. III (West 2000); VA. CODE ANN. §53.1-210, Art. III (2005 Repl. Vol.). While the Agreement does not define the term "detainer," the legislative history reflects that a detainer is simply "a notification filed with the institution in which a prisoner is serving a

- 4 -

sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." 1970 U.S.C.C.A.N. at 4865; *see also Mauro*, 436 at 359. The Agreement does not define the term "penal or correctional institution."

Under the section known as the "anti-shuttling provision" of the Agreement, once a detainer is filed against a prisoner in one jurisdiction, (the "sending state"), and the jurisdiction filing the detainer, (the "receiving state"), obtains custody of the prisoner, the charges against the prisoner must be disposed of in the receiving state before the prisoner is returned to the sending state. Under this provision, if the prisoner is returned to the sending state before the receiving state disposes of the charges, the charges in the receiving state must be dismissed. *See* 18 U.S.C.A. App. 2, § 2, Art. IV(e) (West 2000); VA. CODE ANN. §53.1-210, Art. IV(e) (2005 Repl. Vol.). The Agreement as originally enacted by the federal government, and as adopted by Virginia, states that dismissal of the charges should be with prejudice. *See* 18 U.S.C.A. App. 2, § 2, Art. IV(e); VA. CODE ANN. §53.1-210, Art. IV(e). In 1988, however, federal law was amended to state that in any case where the federal government was the receiving state such a dismissal "may be with or without prejudice." 18 U.S.C.A. App. 2, § 9 (West 2000). This section further states: "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice...." 18 U.S.C.A. App. 2, § 9(1) (West 2000).

In this case, the government admits that the Marshals Service filed a detainer

against Jones with the Bristol City Jail on May 29, 2008. Once a detainer has been filed, even though the defendant is produced in federal court pursuant to a writ, the Agreement is applicable. *See Mauro*, 436 U.S. at 361-62. Despite this court's Order that Jones be detained in federal custody, the government concedes that he was returned to state custody at the Bristol City Jail. Therefore, the court finds that when Jones was returned to the Bristol City Jail, he was returned to state custody. *But see United States v. Persinger,* 562 F.Supp. 557, 562 (W.D. Pa. 1982) (magistrate's oral order detaining defendant in federal custody is "self-executing as to prisoner's custody status and its efficacy is unimpaired" by act of Marshals Service failing to designate defendant as a federal prisoner).

The government argues that the Agreement does not apply in this case because Jones was still being held in the local jail, and, therefore, he had not yet "entered upon a term of imprisonment in a penal or correctional institution of a party State." In support of this argument, the government cites two Sixth Circuit Court of Appeals cases, both of which appear to turn on a finding that a sentenced prisoner being held in a local facility has not "entered upon a term of imprisonment in a penal or correctional institution." *See Jenkins v. United States*, 394 F.3d 407, 413-14 (6th Cir. 2005): *United States v. Taylor*, 173 F.3d 538, 541 (6th Cir. 1999); *see also Crooker v. United States*, 814 F.2d 75, 77-78 (1st Cir. 1987). These cases reason that, since the Agreement is designed to protect against interruption of a prisoner's rehabilitation, it should not be applicable to sentenced prisoners housed in local facilities designed for temporary custody which often do not offer any type of rehabilitation programs. *See Taylor*, 173 F.3d at 541 (citing *Runck v. State*, 497 N.W.2d 74, 81 (N.D. 1993)).

After reviewing each of these cases, the court is of the opinion that the

reasoning used in each is no longer persuasive in light of the Supreme Court's decision in *Alabama v. Bozeman*, 533 U.S. 146 (2001). In *Bozeman* the Supreme Court rejected the argument that a brief transfer of custody should not be a violation of the Agreement because it did not actually interrupt the prisoner's rehabilitation. *See* 533 U.S. at 152-56. Furthermore, the language of the Agreement does not require that the prisoner was housed in a facility that provides some type of rehabilitative program. The language of the Agreement requires only that the prisoner must be serving a term of imprisonment in a "penal or correctional institution." *See* 18 U.S.C.A. App. 2, § 2, Art. III; VA. CODE ANN. §53.1-210, Art. III.

As stated above, the Agreement does not define the term "penal or correctional institution." Under Virginia law, however, the definition of "local correctional facility" includes a jail such as the Bristol City Jail. *See* VA. CODE ANN. § 53.1-1 (2005 Repl. Vol.). Based on this, the court rejects this argument and finds that, at the time the federal detainer was filed against him, Jones was a state prisoner who had "entered upon a term of imprisonment in a penal or correctional institution of a party State."

That being the case, the court finds that the Marshals Service violated Jones's rights under the Agreement when it temporarily obtained him from state custody and then returned him to state custody before this court disposed of the charges against him. Having found a violation of the anti-shuttling provisions of the Agreement, it is of no consequence how technical or slight the violation. *See Bozeman*, 533 U.S. at 152-56. Thus, the only issue remaining before the court is whether the dismissal of the charge against Jones should be with or without prejudice.

Jones argues that dismissal of the charge should be with prejudice because Virginia has never adopted the language contained in § 9 of the federal law which allows for a dismissal of federal charges without prejudice. The Agreement is a congressionally sanctioned interstate compact. *See* U.S. CONST. art. I, §10. As such, the Agreement is a federal law subject to federal construction. *See Bozeman*, 533 U.S. at 149; *Cuyler v. Adams*, 449 U.S. 433, 442 (1981). That being the case, the Fourth Circuit has held that individual states may not unilaterally amend the terms of the Agreement as approved by Congress. *See Bush v. Muncy*, 659 F.2d 402, 411-13 (4th Cir. 1981). Nonetheless, insofar as the Agreement is binding on the United States, it is a matter of federal law. The terms of the Agreement as enacted into federal law included the express right to amend or alter the Agreement. *See* 18 U.S.C.A. App. 2, § 7 (West 2000). Pursuant to that right, the federal law was amended in 1988 to give federal courts the option of dismissing a charge without prejudice. Furthermore, under the Supremacy Clause of the U. S. Constitution, whenever state law conflicts with federal law, federal law controls. *See* U.S. CONST. art VI; *see also Bozeman*, 533 U.S. at 156 (federal statutory provision that allows for dismissal of charges with or without prejudice governs when the United States is the receiving state). Therefore, the court holds that it has the authority to dismiss the charge against Jones without prejudice.

In determining whether to dismiss the charge against Jones with or without prejudice, the court must consider, among others, the factors specifically listed in § 9. Jones is charged with violating 21 U.S.C. § 846 by conspiring to possess with intent to distribute and to distribute 50 grams or more of crack cocaine. The offense with which Jones is charged is serious, in that, if convicted, Jones faces a mandatory minimum prison sentence of at least 10 years' imprisonment. Also, the Indictment

- 8 -

Case 1:08-cr-00024-JPJ-PMS   Document 539   Filed 08/07/08   Page 8 of 12   Pageid#: 6163

charges that Jones was involved in a complex, large-scale crack and cocaine distribution conspiracy. According to the facts presented in the affidavit attached to the Criminal Complaint, on March 24, 2008, Jones admitted to law enforcement officers that he had been distributing crack in the Bristol, Virginia, area for the past year and had obtained approximately one ounce of crack on approximately 50 occasions during the course of the previous year from co-defendant Reginald Morton.

Also, the facts and circumstances of this case show that Jones was removed from and returned to state custody on the same date. Therefore, any interruption in his state rehabilitative efforts was necessarily brief. While, under *Bozeman*, this may no longer be taken into account in determining whether there has been a violation of the Agreement, it may be considered by the court in determining whether the violation justifies dismissal of the charge with prejudice. *See United States v. Kelley*, 402 F.3d 39, 42 (1st Cir. 2005). It is clear from the face of the court's own detention order that the Marshals Service should have known that Jones was serving a state court sentence and, therefore, under the terms of the court's order and the Agreement, the Marshals Service should not have returned Jones to state custody. However, no party has offered any explanation as to how or why this error occurred, including offering no evidence of any improper motive on the part of the Marshals Service. Furthermore, neither party has argued that the reprosecution of Jones would have any particular impact on the administration of the Agreement or the administration of justice. In particular, Jones has offered no evidence or argument that he was prejudiced in any way by his return to state custody. That being the case, I recommend that the court dismiss the charge against Jones without prejudice.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Prior to May 29, 2008, both Virginia and the United States had adopted the Agreement;
2. On May 29, 2008, Jones was in the custody of the Bristol City Jail serving a Virginia state court sentence;
3. Prior to May 29, 2008, Jones had "entered upon a term of imprisonment in a penal or correctional institution of a party State" under the Agreement;
4. The Marshals Service filed a detainer against Jones with the Bristol City Jail on May 29, 2008, based on the Indictment returned on May 28, 2008, charging him with violating 21 U.S.C. § 846;
5. Pursuant to a writ, the Marshals Service took custody of Jones on June 16, 2008, produced him in this court for an arraignment on the pending Indictment and then returned him later that same day to state custody at the Bristol City Jail;
6. When Jones was returned to state custody on June 16, 2008, the Indictment remained pending against him in this court;
7. By returning Jones to state custody on June 16, 2008, the Marshals Service violated Jones's rights under the "anti-shuttling provision" of the Agreement, requiring dismissal of

-10-

>    the charge contained in the Indictment against Jones in this
>    court; and
> 8. Under the facts and circumstances of this case, the charge contained in the Indictment against Jones should be dismissed without prejudice.

## RECOMMENDED DISPOSITION

The undersigned recommends that this court grant the Motion and dismiss the charge pending against Jones without prejudice.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and

recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 6th day of August 2008.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE