# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Case No. 1:08CR00024-51 |
| v. ) | **OPINION** |
| ) | |
| **TRAVIS DELL JONES**, ) | By: James P. Jones |
| ) | Chief United States District Judge |
| Defendant. ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Paul G. Beers, Glenn, Feldmann, Darby & Goodlatte, Roanoke, Virginia, for Defendant.*

The magistrate judge found in this case that the Indictment against the defendant ought to be dismissed because the government violated the "anti-shuttling" provision of the Interstate Agreement on Detainers Act. The issues now before me are whether the 1988 amendment of the Act by Congress allowing a dismissal without prejudice was a violation of the Compact Clause of the Constitution and whether, in any event, the facts here compel a finding that the dismissal must be with prejudice.

For the reasons stated, I hold that the provision of the Act permitting dismissal without prejudice was within Congress's constitutional power and that the facts in this case showing a violation of the Act justify a dismissal without prejudice.

I

The relevant facts are not in dispute. On April 21, 2008, the government filed a criminal complaint alleging that the defendant, Travis Dell Jones, and 50 other individuals were involved in a conspiracy to distribute crack and powder cocaine. An arrest warrant was issued for Jones on April 22, 2008. On the face of the warrant, it stated that it was to be filed as a detainer with the Bristol, Virginia, City Jail. Jones had been sentenced by the Circuit Court for the City of Bristol to 30 years' imprisonment with 24 years and 10 months of that term suspended, and he was remanded by that court to the custody of the Sheriff of the City of Bristol on March 27, 2008.

On May 12, 2008, a magistrate judge of this court issued a Writ of Habeas Corpus Ad Prosequendum to the Bristol City Jail to surrender Jones to the United States Marshals Service for an initial appearance. The Marshals Service produced Jones for his initial appearance before the magistrate judge on May 19. By Order dated May 20, 2008, the magistrate judge directed that Jones be detained pending trial and remanded to the custody of the Marshals Service based on the fact that he was "currently serving an active state court sentence." Despite this Order, the government now concedes that the Marshals Service returned Jones to the custody of the Bristol City Jail after his court appearance on May 19.

On May 28, 2008, a grand jury of this court returned an indictment charging Jones and the 50 other individuals. As a result of the Indictment, the Marshals Service filed a detainer against Jones with the Bristol City Jail on May 29, 2008. This detainer incorrectly stated that Jones was an "unsentenced prisoner." The detainer also incorrectly stated that "[t]he notice and speedy trial requirements of the Interstate Agreement on Detainers Act do NOT apply to this Detainer because the subject is not currently serving a sentence of imprisonment at the time the Detainer is lodged."

On June 9, 2008, the magistrate judge issued another Writ Of Habeas Corpus Ad Prosequendum to the Bristol City Jail to surrender Jones to the Marshals Service for an arraignment on June 16, 2008. The Marshals Service produced Jones for his arraignment as scheduled and returned Jones to the custody of the Bristol City Jail afterwards. The return of the June 9 writ filed by the Marshals Service shows that the Marshals Service assumed custody of Jones on June 16, 2008, and returned Jones to state custody on the same day. The return form had a place on which to indicate whether or not the person obtained pursuant to the writ was a sentenced state prisoner, but this information was not completed. Despite the fact that the Marshals Service routinely houses federal prisoners at the Bristol City Jail, the government does not contend that Jones was being held in federal custody after his return on June 16 to the jail.

On June 20, 2008, Jones's counsel filed the present motion seeking dismissal of the charge against Jones based on the violation of Jones's rights under the Interstate Agreement on Detainers. The motion was referred to the magistrate judge for report and recommendation pursuant to 28 U.S.C.A. § 636(b)(1)(B) (West 2008). The magistrate judge thereafter submitted her Report, recommending that the Indictment be dismissed as to Jones without prejudice to his reprosecution.

The government has not objected to the magistrate judge's recommendation. The defendant has objected to the recommendation that the dismissal be without prejudice. The defendant contends that the dismissal should be with prejudice because (1) the federal statute permitting dismissal without prejudice after violation of the Agreement is unconstitutional, or (2) in any event, the facts of this case dictate a sanction of dismissal with prejudice, thus preventing his future prosecution.

The defendant's objections have been argued and are ripe for decision. For the reasons that follow, I will overrule the objections and accept the magistrate judge's recommendations.

II

The Interstate Agreement on Detainers ("Agreement") was enacted into federal law as the Interstate Agreement on Detainers Act ("IADA") in 1970, 18 U.S.C.A.

app. 2 (West 2000), and has been adopted or enacted in 48 of the 50 states, including Virginia, Va. Code Ann. § 53.1-210 (2005). The stated purpose of the Agreement is "to encourage the expeditious and orderly disposition of [pending] charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints" filed against prisoners. 18 U.S.C.A. app. 2 § 2, art. I.

Under the "anti-shuttling" provision of the Agreement, once a detainer is filed against a prisoner in one jurisdiction (the "sending state") and the jurisdiction filing the detainer (the "receiving state") obtains custody of the prisoner, the charges against the prisoner must be disposed of in the receiving state before the prisoner is returned to the sending state. 18 U.S.C.A. app. 2 § 2, art. IV(e). The magistrate judge correctly found that the Marshals Service violated Jones's rights under the Agreement when it temporarily obtained him from state custody and then returned him to state custody before this court disposed of the case. The only issue remaining is whether the dismissal of the charge against Jones should be with or without prejudice.

III

In 1988, Congress amended the IADA by adding § 9, which permits the dismissal of cases with IADA violations to be with or without prejudice, rather than

- 5 -

solely with prejudice as was previously required under the 1970 Act. This provision has been used to dismiss without prejudice cases involving a violation of the anti-shuttling provision. *See, e.g.*, *United States v. Kelley*, 402 F.3d 39 (1st Cir. 2005); *United States v. Gezelman*, 522 F. Supp. 2d 344 (D. Mass. 2007); *United States v. Small*, 209 F. Supp. 2d 1114 (D. Colo. 2002). The defendant contends that the 1988 amendment was unconstitutional, and therefore dismissal of his case must be with prejudice.

The defendant makes two arguments as to why the 1988 amendment is unconstitutional. First, the defendant insists that "[t]he United States, as a party 'state' to the IAD, is not free to amend the IAD unilaterally." (Def.'s Objections to Magistrate Judge's Report & Recommendation 2.) Second, the defendant asserts that "Congress has no express or implied power under the Compact Clause or the Supremacy Clause to amend unilaterally a compact to which it already consented." (*Id.* at 3.) However, the cases the defendant cites are distinguishable from the case at hand, and ultimately I find that the 1988 amendment adding § 9 to the IADA is constitutional.

A

The defendant, citing *Bush v. Muncy*, 659 F.2d 402, 411 (4th Cir. 1981), argues that "[t]he United States, as a party 'state' to the IAD, is not free to amend the IAD

- 6 -

unilaterally." (Def.'s Objections to Magistrate Judge's Report & Recommendation 2.) However, the reasoning in *Bush* does not apply to the situation at hand. In *Bush*, the Fourth Circuit concluded that the Agreement, which was "created through a process of prior nonspecific congressional approval . . . followed by the sequential adoption of the proposed agreement" by party states, *id.* at 410, "became fixed as federal law upon its adoption by the second member state," *id.* at 411. Because the Agreement is federal law, the court reasoned, "under the Supremacy Clause . . . no party state has the power either in conjunction with or independently of its entry into the Agreement to alter in any substantial way any of its provisions governing the intended operation of the IAD between party states." *Id.* But the Supremacy Clause cannot give rise to such a restraint on Congress. Indeed, the reverse is true: under the Supremacy Clause, any agreement between the states cannot supercede federal law. U.S. Const. art. VI, cl. 2. ("This Constitution, and the laws of the United States which shall be made in pursuance thereof; . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding.").

The defendant accurately states that the United States is a party "State" to the Agreement. *See* 18 U.S.C.A. app. 2 § 2, art. II(a) ("'State' shall mean a State of the United States [and] the United States of America . . . ."). However, in a footnote to

the opinion in *Bush*, 659 F.2d at 412 n.11, the Fourth Circuit made clear that the United States is "not a 'party' to the *constitutional* compact." In other words, congressional consent was not constitutionally required under the Compact Clause for the federal government to enact the terms of the Agreement into federal law. The Compact Clause provides that "[n]o state shall, without the consent of Congress, . . . enter into any agreement or compact with another state, or with a foreign power." U.S. Const. art. I, § 10, cl. 3. Consent under the Compact Clause is required for an agreement among states, but not for an agreement between the states and the federal government.

Although any agreement between a state and the federal government will certainly be approved by the federal government, such approval is not mandated by the Compact Clause. Hence, the United States is able to specifically retain "the right to 'alter or amend' as well as to 'repeal' the Act by which it joined the Agreement . . . [even though] the amendment or alteration option is not available to party states in respect of fundamental provisions of the Agreement . . . ." *Bush*, 659 F.2d at 412-13 n.11.

The defendant also cites a footnote in Justice Brennan's dissent in *Carchman v. Nash*, 473 U.S. 716, 749 n.18 (1985), stating that because the Agreement is an interstate compact, "its terms cannot be amended unilaterally by one or even several

- 8 -

signatory jurisdictions." Justice Brennan's use of the term "jurisdiction" seems to include the United States, but the context of the footnote makes this unclear. Justice Brennan argued that Congress's 1970 description of "detainer" is not relevant to what the Agreement's 1957 terms meant, which suggests that he understood that Congress's version of the Agreement may have permissibly differed from the earlier version binding on all of the signatory states. All in all, it seems as though not much should be read into this dissenting footnote, especially since the rationale for the rule against unilateral amendment was described in more detail by the Fourth Circuit in *Bush*.

B

The defendant's second constitutional argument is that "Congress has no express or implied power under the Compact Clause or the Supremacy Clause to amend unilaterally a compact to which it already consented." (Def.'s Objections to Magistrate Judge's Report & Recommendation 3.) However, the 1988 addition of § 9 amends only the federal IADA and does not affect Congress's prior consent to the Agreement as it applies to the states.

In support of his position, the defendant cites to four pertinent cases: *Koterba v. Pennsylvania Department of Transportation*, 736 A.2d 761 (Pa. Commw. Ct.

1999); *Mineo v. Port Authority of New York & New Jersey*, 779 F.2d 939 (3rd Cir. 1985); *Tobin v. United States*, 306 F.2d 270 (D.C. Cir. 1962); and *Riverside Irrigation District v. Andrews*, 568 F. Supp. 583 (D. Colo. 1983). *Riverside Irrigation District* is the only case of the four to expressly state that Congress does not have the power to alter, amend, or repeal consent for an interstate compact. 568 F. Supp. at 589. The other three express uncertainty as to whether Congress may have such power. *Koterba*, 736 A.2d at 764; *Mineo*, 779 F.2d at 948; *Tobin*, 306 F.2d at 273. In all of the cases cited, two or more states entered into a compact and received Congressional approval; Congress did not join the compact as a party "state," nor did Congress enact similar legislation applicable to the federal government.

The facts here clearly differ. When Congress enacted the IADA in 1970, it included the following provision: "The Interstate Agreement on Detainers is hereby enacted into law and entered into by the United States on its own behalf and on behalf of the District of Columbia with all jurisdictions legally joining in substantially the following form." 18 U.S.C.A. app. 2 § 2. Consent for the Agreement as a state compact was provided much earlier in the Crime Control Act of 1934, 48 Stat. 909, ch. 406 (1934). *See Cuyler v. Adams*, 449 U.S. 433, 441 (1981) (reviewing the history of the Agreement). The 1970 IADA applies to the United States government

- 10 -

Case 1:08-cr-00024-JPJ-PMS   Document 754   Filed 09/12/08   Page 10 of 14   Pageid#: 6690

and the District of Columbia, and no other jurisdiction. Congress agreed to enact the IADA in "substantially the [same] form" as the party states, 18 U.S.C.A. app. 2 § 2, but as indicated above, it is not similarly bound by the terms of the constitutional compact. Since the 1988 amendment to the 1970 IADA applied only to the United States government and the District of Columbia, there is no alteration of the constitutional compact between the states, and all of the cases that defendant cites are clearly distinguishable.

When considering Congress's potential ability to alter, amend, or repeal its consent to state compacts under the Compact Clause, the D.C. Circuit demonstrated concern that "the suspicion of even potential impermanency would be damaging to the very concept of interstate compacts." *Tobin*, 306 F.2d at 273. Similarly, if the federal government can alter, amend, or repeal its own involvement in a federal-state compact, uncertainty about the longevity of such an agreement might result. But in spite of any such uncertainty, the Supremacy Clause provides that federal law is the supreme law of the land, and therefore a state should not be able to insist that a federal-state compact supercedes subsequently enacted federal law.

For today's purposes, and limiting the scope of this opinion to the facts and the situation before this court, I find that the 1988 congressional amendment to the federal IADA adding § 9 is constitutional. The United States is not a party to the

constitutional compact between the states and is therefore not similarly bound by the Supremacy Clause to maintain the original terms of the Agreement—indeed, the Supremacy Clause supports Congress's ability to amend the federal law with respect to the federal government. Congress's ability to amend its consent to a state compact is not at issue here. The only relevant inquiry is whether Congress may amend the federal law applicable to the federal government, which it certainly may do.

IV

The defendant argues that even if there is no constitutional problem, the dismissal should be with prejudice in order to uphold principles of multi-jurisdictional comity and mutuality. In that regard, the defendant insists that the United States, as the receiving state, is bound to play by the rules of Virginia, the sending state, which only permits dismissal with prejudice. But § 9 of the federal IADA explicitly provides that it applies "in a case in which the United States is a receiving State." 18 U.S.C.A. app. 2 § 9; *see also Alabama v. Bozeman*, 533 U.S. 146, 156 (2001) (noting that § 9 governs when the United States is a receiving state). Under the terms of the statute and from the power invested in the federal government

- 12 -

by the Supremacy Clause, § 9 applies in this case and dismissal without prejudice is permissible.

The defendant also argues that the magistrate judge misapplied the burden of proof under the IADA in evaluating whether to dismiss the indictment with or without prejudice. Having reviewed de novo the issue, I find that she properly considered the factors listed in § 9, which include "[t]he seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice." 18 U.S.C.A. app. 2 § 9(1). I therefore adopt the magistrate judge's reasoning in that regard. The offense with which Jones is charged is serious, as shown by the fact that he faces a mandatory minimum prison sentence of at least 10 years if he is convicted. The facts and circumstances of the case leading to the dismissal demonstrate little to no harm to the defendant—Jones was removed from and returned to state custody on the same day, so any interruption in his state rehabilitative efforts was necessarily brief. And there is no indication that reprosecution would negatively impact the administration of the Agreement or the administration of justice.

The defendant argues that dismissal with prejudice is appropriate in this case because the violation of the Agreement that occurred in this case also happened in the

case of one of his codefendants, showing a "pattern of violations" justifying this sanction. At the least, he argues, the burden ought to be on the government to prove that violations of the Agreement are not widespread in this district and the requirements of the Agreement are not routinely ignored.

While these violations are troublesome, in conducting the necessary balancing exercise in this case, I do not find that these circumstances overwhelm the factors to the contrary that support a dismissal without prejudice.

V

For the reasons stated, the defendant's objections to the magistrate judge's Report and Recommendation will be denied, the magistrate judge's recommendations will be accepted, and the indictment against the defendant will be dismissed without prejudice. A separate order will be entered.

DATED: September 12, 2008

/s/ JAMES P. JONES
Chief United States District Judge

- 14 -

Case 1:08-cr-00024-JPJ-PMS   Document 754   Filed 09/12/08   Page 14 of 14   Pageid#: 6694